**William Alan CALLISON, Appellant,**

v.

**UNITED STATES of America,**
**Appellee.**

**No. 23014.**

United States Court of Appeals
Ninth Circuit.

June 18, 1969.

Rehearing Denied July 9, 1969.

James R. McCall (argued), Oakland, Cal., for appellant.

Paul G. Sloan (argued), Asst. U. S. Atty., Cecil F. Poole, U. S. Atty., Jerrold M. Ladar, Asst. U. S. Atty., Crim. Div., San Francisco, Cal., for appellee.

Before MERRILL and BROWNING, Circuit Judges, and TAYLOR, District Judge.*

MERRILL, Circuit Judge:

Following a nonjury trial appellant was found guilty of refusal to submit to induction into the Armed Forces of the United States in violation of 50 App.U. S.C. § 462(a). He has taken this appeal from judgment.

1. *Refusal to Submit*

The principal question presented is whether appellant can, under the peculiar facts of this case, be charged with refusal to submit to induction. His "refusal" consisted of his disobedience of an order of the officer in charge of induction, as a consequence of which he was, prior to being processed, arrested and removed from the induction center by the police. He contends that the disobeyed order violated his First Amendment rights; that accordingly he cannot be charged with disobedience or its consequences.

32 C.F.R. § 1637.14 provides in part:

"(b) Upon reporting for induction, it shall be the duty of the registrant * * * (3) to appear at the place where his induction will be accomplished, (4) to obey the orders of the representatives of the Armed Forces while at the place where his induction will be accomplished, (5) to submit to induction * * *."

Appellant was ordered to report for induction at the Armed Forces Examining and Induction Station in Oakland, California, at 7:00 A.M. on November 7,

* Honorable Fred M. Taylor, Chief United States District Judge for the District of Idaho, sitting by designation.

1966. He reported on time. Outside the station he proceeded to pass out to inductees as they arrived leaflets opposing the draft and the war in Vietnam. He was warned by the police not to block entrance to the station, but otherwise there was no interference with his activities. In due course he entered the station, surrendering his remaining leaflets to the police at their request. He proceeded to the reporting room on the second floor of the station where about 75 inductees were gathered. He was advised by a soldier in charge to wait for his name to be called, at which point he would be given papers needed in the induction process and sent to report to another room.

Appellant took a seat and proceeded to write out a petition on a tablet he had brought with him. The petition read "We petition the army not to draft us so that we will not be forced to fight a brutal and unnecessary war in Vietnam."

He then proceeded to ask inductees if they would sign it. Those solicited declined to sign. Either they were volunteering or said that they felt the petition to be a useless act. The solicitations and responses were carried on in a conversational tone of voice. Conversation was generally permitted in the room. Up to this point no disruption of that portion of the process of induction being carried on in the room—the calling of names and furnishing of papers—resulted from appellant's activity.

Appellant's conduct was noted by the adjutant to the station commander—a captain—who told appellant that solicitation of signatures on petitions was not allowed. Appellant insisted that he had a constitutional right to solicit and continued to do so. The station commander —a colonel—then joined the discussion. He confirmed the rule announced by the captain. He ascertained that appellant was present in response to an order to report for induction and asked appellant

to surrender the petition. Appellant refused to do so but read the petition to the colonel. The colonel then directed appellant to accompany him to the colonel's office in order to discuss the matter, since the discussion in the room had by then become so distracting that the induction process had come to a halt. Appellant refused. When the colonel took him by the arm he shook off the colonel, stating "Take your Goddam hands off of me." A scuffle ensued between appellant and two members of the colonel's staff during which appellant stated (according to the colonel's testimony, which was denied by appellant): "No [obscenity] is going to induct me."

The colonel then advised appellant that he had three alternatives: (1) cooperate and allow himself to be processed for induction, with the understanding that he could, if such was his desire, refuse induction at the appropriate point; (2) leave the induction center and have his record so annotated; (3) require the colonel to have him arrested and removed by the police.

Appellant inquired whether the colonel was asking him to leave. The colonel said he was not and repeated the alternatives, adding advice as to the penalties provided for refusal to submit to induction.

Appellant rejected the alternatives. The police arrived, the colonel once again offered appellant the alternatives, once again they were rejected and appellant was taken under arrest and led away by the police.

■ We hold that the order to refrain from soliciting signatures was not an impermissible intrusion upon appellant's First Amendment rights and was entitled to respect and obedience; that appellant, by deliberately engaging in conduct that he knew would make induction impossible, was properly charged with refusal to submit to induction.[1]

1. Appellant's knowledge that disobedience would subject him to the consequences of

a refusal to submit to induction eliminates the question dealt with in United States

First Amendment rights are not absolutes. Regulation as to time, place and manner of exercise is proper where reasonably related to a valid public interest. Cox v. Louisiana, 379 U.S. 536, 559, 85 S.Ct. 453, 13 L.Ed.2d 471 (1965). In judging the reasonableness of restrictive regulation the extent to which the restriction imposes a burden on free exercise of the rights must be taken into balance with the public interest involved.

Here the very process of induction was under way and those present were subject to the processing orders of the officers in charge. Even so, appellant was not prevented from engaging in orderly speech nor orderly registration of opposition or grievance. He was precluded only from efforts to incite and solicit others to join with him in an expression of opposition to the very process they were then undergoing. The order was thus directly related to a valid and important governmental purpose; that of maintaining an orderly process of induction—one free from disruption or disruptive potential.[2]

Further, the rights of others were involved. It must be noted that this was not an open public gathering. Appellant's conduct was an intrusion upon persons met because their presence was required for a specific purpose. Appellant as an inductee had no greater right than any outsider to intrude himself upon those captively present by harangue upon any subject or solicitation for any purpose. Since any such intrusion is potentially offensive and since the gathering was Government compelled, the Government might decently feel a responsibility to maintain the gathering free from such intrusion.

On balance we find the restriction imposed upon appellant's rights by the order in question to be wholly reasonable.

2. *Validity of the Order to Report*

Appellant had sought unsuccessfully to be reclassified as a conscientious objector. He contends that the refusal of the local board to so classify him was without basis in fact and that the board's order to report was thus invalid.

Appellant had duly exhausted his administrative remedies by resort to the appeal board.[3] That board, following investigation by agents of the Department of Justice, had affirmed the local board.

Appellant construes the action of the appeal board as founded upon the lack of a traditional and orthodox religious basis for his beliefs. He contends that this was error.[4]

We do not so construe the board's action. The report to the board by the

v. Meyers, 410 F.2d 693 (2d Cir. 1969), which also involved arrest for disorderly conduct in the induction process.

2. Use of a public building for a specific public purpose, such as a jail, a schoolhouse or an induction center, will justify governmental limitation on exercise of First Amendment rights which interfere with that purpose. *See* Adderley v. Florida, 385 U.S. 39, 87 S.Ct. 242, 17 L.Ed.2d 149 (1966).

3. The Government's contention that this defense is not available to appellant due to his failure to "go to the brink" of induction is disposed of by McKart v. United States, 395 U.S. 185, 89 S.Ct. 1657, 23 L.Ed.2d 194 (1969).

4. 50 App.U.S.C. § 456(j), at the time of appellant's conviction, read in part as follows:

"Nothing contained in this title * * * shall be construed to require any person to be subject to combatant training and service in the armed forces of the United States, who, by reason of religious training and belief, is conscientiously opposed to participation in war in any form. Religious training and belief in this connection means an individual's belief in relation to a Supreme Being involving duties superior to those arising from any human relation, but does not include essentially political, sociological, or philosophical views or a merely personal moral code."

In 1967 the second sentence was amended to read:

"As used in this subsection, the term 'religious training and belief' does not include essentially political, sociological, or philosophical views, or a merely personal moral code."

Department of Justice in major part questioned whether appellant's opposition to war was conscientiously entertained rather than whether its source was religious training and belief. The report dealt with many factors other than lack of othodox religious training and belief: the view of the hearing examiner (who had personally examined appellant) that appellant was "unsettled in his thinking and has not developed any mature convictions"; the views of some persons interviewed that appellant's opposition to the Vietnam war was founded on political rather than moral convictions; the timing of appellant's application for a I–O classification.

Appellant himself failed to make any showing as to the degree of sincerity with which his avowed beliefs were entertained.

■ Upon this record we cannot say that doubt of appellant's sincerity and the consequent refusal to classify him as a conscientious objector were without basis in fact. Accordingly we do not reach the questions tendered by appellant as to the meaning of "religious training and belief" or the propriety of favoring opposition to war that is so founded.

Judgment affirmed.