Michael James **WALSH**, Appellant,

v.

**UNITED STATES of America,**
Appellee.

No. 25813.

United States Court of Appeals,
Ninth Circuit.

Jan. 12, 1971.

Earl Monsey (argued), Las Vegas, Nev., for appellant.

Bart M. Schouweiler (argued), U. S. Atty., Wm. Patterson Cashill, Asst. U.S. Atty., Las Vegas, Nev., for appellee.

Before ELY and HUFSTEDLER, Circuit Judges, and BYRNE,* District Judge.

HUFSTEDLER, Circuit Judge:

Walsh appeals from a conviction for violating 50 U.S.C. App. § 462 upon his failure to comply with an order of his local draft board to report for civilian work in lieu of induction. We reverse his conviction on the ground that the order to report for the civilian work to which he was assigned was invalid, because state law forbade Walsh's employment in the job to which he was assigned.

---

19. 1 J. Moore, Federal Practice ¶ 0.145 [5], at 1777 (2d ed. 1964).

\* Honorable William M. Byrne, Senior Judge for the Central District of California, sitting by designation.

Walsh, classified I-O, was initially ordered by his local board to report to Mrs. Gwendolyn Williams, Personnel Assistant of the Nevada State Hospital, to do "welfare work." Walsh reported to Mrs. Williams on March 18, 1969. She advised Walsh that there was an opening for a nursing assistant trainee, a position for which a written examination was required. He filed an application for that position. At the same time, he requested an application for a job as a hospital janitor, and he also filled out that application. No examination was required for the janitor's job. Mrs. Williams told him that she considered a janitorial post as "institutional work," not "welfare work," and that, since Walsh was ordered to do "welfare work," he must apply for a nursing assistant trainee post.

On the same day, Walsh took the written examination for the nursing position. He scored 34; passing was 56. After he failed the test, Mrs. Williams took Walsh to an interview with Mrs. Mae Peebles, supervising psychiatric nurse, who was not told that Walsh failed the test. Mrs. Peebles agreed to hire Walsh. Mrs. Peebles, Mrs. Williams, and Walsh agreed that he should start work the following month. Mrs. Williams reported Walsh's proposed hiring to the board. The board advised Mrs. Williams that Walsh was to report to work as a nursing assistant the next day, March 19, 1969. Mrs. Williams told Walsh on March 18 about the board's direction. Walsh did not report on March 19. The board's order of March 18, and Walsh's failure to report on March 19, are the bases for his conviction.

Under Nevada law, a person cannot be hired as a nursing assistant trainee unless either one of two conditions has been met: (1) the applicant passes a written examination, or (2) an emergency exists, justifying an emergency appointment for not more than 60 days, "to prevent the stoppage of public business," in which event an applicant can be hired whether or not he has taken and passed the examination. (Nev.Rev.

Stats. § 284.315; Rule 6(f), Nev.State Personnel Adm'n.) Mrs. Williams testified that Walsh's employment was not necessary to prevent a work stoppage in the hospital. The district court was satisfied that there was no emergency in the staffing of the hospital. Thus, neither requirement of Nevada law was met.

There is nothing in the record to support a conclusion that any state employee was authorized to waive the provisions of Nevada law concerning Walsh's employment, or that Walsh's local draft board could do so.

Section 1660.1(a) (1) of the Selective Service System's Regulations (32 C.F.R. § 1660.1(a) (1)) describes appropriate civilian work to which a registrant can be assigned in lieu of induction. Included in such work is state employment. But the regulations do not purport to authorize an order to undertake state employment for which, under state law, the registrant is disqualified. Moreover, the regulations do not exclude from appropriate civilian work employment as a hospital janitor. The order directing Walsh to report for work for which he was disqualified is not an order to report for "appropriate" civilian work within the meaning of section 1660.1(a) (1). The order is therefore void.

The Government suggests that the result should be different because Walsh may have deliberately failed the examination. Whether or not Walsh purposely disqualified himself from the post to which he was assigned is irrelevant. Even deliberate failure to pass an examination is not a federal offense.

The judgment is reversed with directions to dismiss the indictment.

BYRNE, District Judge:

I respectfully dissent.

Under the regulations of the Selective Service System, registrants classified I-O perform, in lieu of induction into the Armed Forces, civilian work which is deemed in "the national health, safety, or interest." Primary responsibility for

determining "appropriate" civilian work is vested in the officials of the Selective Service System. In the instant case, this responsibility has been seemingly dissipated by the holding of the majority. Here, the registrant classified I-O, sabotaged a legitimate order to report for "appropriate" civilian work because *he* determined this work to be incompatible with his personal interests. In light of the conspicuous *absence of even a hint of supporting authority*, this curious result must be labeled as an odd precedent.

Walsh was ordered by his local board to report on March 17, 1969, to Mrs. Gwendolyn Williams to determine his "employability" for "welfare" work at the Nevada State Hospital. Arriving a day late, March 18, he met with Mrs. Williams, a personnel assistant. Mrs. Williams informed Walsh the only position with a vacancy was that of "nursing assistant trainee." Despite the lack of openings, Walsh insisted upon filling out an application for janitorial work, a position for which there was no vacancy.

In order to secure the *only* available position for which he was qualified, Walsh was required to take an examination consisting of eighty multiple choice questions. The examination was geared to the minimum qualifications for the nursing assistant trainee position, an eighth grade education, and the ability to read and write. Although Mrs. Williams told Walsh he had two hours to complete the examination, he took only twenty-five minutes. During the examination, Mrs. Williams observed Walsh "flipping the pages of the test booklet." The hurried manner in which he took the examination, coupled with incorrect answers and unanswered questions, combined to give Walsh, who graduated in the top ten percent of his high school class, a failing score. The trial court was satisfied there was sufficient evidence to support an inference that Walsh had intentionally failed the examination.

With utter disregard for the trial judge's finding, the majority holds the appellant's intentional failure to be "irrelevant," and states that it "is not a federal offense" to deliberately fail an examination. While it is true that deliberate failure of an examination has been spared the odium of "federal offense," such conduct cannot be considered *ipso facto* insulated from federal prosecution when it is a part of the corpus delicti of a federal offense. Several circuits, including our own, have held that a Selective Service registrant may be guilty of violating the United States Code even though his particular conduct is not *per se* a federal offense.

In Callison v. United States, 413 F.2d 133 (9th Cir. 1969) vacated on other grounds, Morico v. United States, 399 U.S. 526, 90 S.Ct. 2230, 26 L.Ed.2d 776 (1970), the defendant, who had been ordered to report for induction, circulated an anti-war petition among the inductees at the induction center. The defendant was brought to the office of the center's commanding officer, where he was advised by that officer to either cooperate or leave the center. Callison opted to pursue his circulation effort and was arrested. This Court did not find the defendant's conduct "irrelevant" and affirmed the trial court's finding of guilty, stating:

> "We hold * * * that appellant, by deliberately engaging in conduct that he knew would make induction impossible, was properly charged with refusal to submit to induction."
> 413 F.2d at 135.

A similar situation confronted the Second Circuit in United States v. Meyers, 410 F.2d 693 (2d Cir. 1969), cert. den. 396 U.S. 835, 90 S.Ct. 93, 24 L.Ed. 2d 86 (1969). There, a registrant who had been ordered to report for induction arrived at the induction center and proceeded to pass out anti-Vietnam literature in the room where pre-induction orientation is given. The registrant ignored requests by the military police to sit down. A scuffle and obscenities uttered by the registrant accompanied his being seated by the MPs. Finally, the exasperated officials had the registrant

escorted from the center. Awaiting the registrant were two friends who patted him on the back. The Second Circuit did not find this conduct "irrelevant," but on the contrary, sustained the registrant's conviction, noting that all these facts "taken together, sufficiently indicate that appellant had an intent not to submit to induction." 410 F.2d at 695, 696. See, Bratcher v. United States, 149 F.2d 742 (4th Cir. 1945), cert. den. 325 U.S. 885, 65 S.Ct. 1580, 89 L.Ed. 2000 (1945), where appellant's conviction for evading service in the Armed Forces was upheld because he had taken the drug, benzedrine, prior to reporting for induction for the sole purpose of rendering his physical condition abnormal.

In the instant case, the appellant had been ordered to report to the Nevada State Hospital for determination of his employability for welfare work in lieu of induction into the Armed Forces. Upon arriving a day late, he was informed by a personnel assistant that the only position in which there was an opening was that of nursing assistant trainee. The appellant insisted upon filling out an application for a position for which there was no opening, thus hoping to effectively evade any welfare work. This intention was further manifested by his conduct during the taking of the mandatory examination, and again when he urged Mrs. Peebles to tell Mrs. Williams that he was not qualified for the position. Mrs. Peebles refused to stultify her position, and ignored his overtures. As should be readily seen, the calculated nature of the appellant's conduct is clearly within the thinking expressed in *Callison, Meyers,* and *Bratcher.* In sum, I would not so freely assign Walsh's intentional failure of the said examination to the filing basket of the "irrelevant."

The majority reverse on the ground that the appellant was ordered to report for a job that he was not qualified to perform. This position is embedded in the theory that under Nevada law, Walsh was required to pass an examination and that when, on the day previous to the date he was ordered to report for work, he deliberately failed to pass the examination, he rendered himself disqualified and was home free. Relying on Nevada's law, the majority conclude that "the order directing Walsh to report for work * * * is not an order to report for 'appropriate' civilian work within the meaning of Section 1660.1(a) (1)."

The view advanced by the majority places unwarranted reliance on the law of Nevada. Walsh was ordered by an agency of the Federal government to report to the Nevada State Hospital on March 19, 1969, for the purpose of performing civilian work in lieu of induction. He disregarded the order and failed to report. Without more, he was guilty of the offense charged in the indictment. Jurisdiction over his Selective Service obligation rested with Federal authorities. In short, the state law of Nevada is irrelevant because Walsh's duty was to abide by Selective Service's order to report for civilian work. The question of whether work was available, had Walsh reported, is a matter which is alien to the crime he has been found guilty of committing. Our only concern should be whether the registrant complied with a valid order to report. The issue relating to the law of Nevada is not reached because Walsh did not comply with the order issued by Selective Service.

The district court correctly decided this case, and I would affirm.