**UNITED STATES of America,
Appellee,**

v.

**Juan Pedro FARINAS, Appellant.**

**No. 1027, Docket 71–1257.**

United States Court of Appeals,
Second Circuit.

Argued June 30, 1971.

Decided Sept. 28, 1971.

Lawrence G. Sager, American Civil Liberties Union, New York City (Melvin L. Wulf, American Civil Liberties Union, and Sanford M. Katz, New York Civil Liberties Union, New York City, on the brief), for appellant.

Peter L. Truebner, Asst. U. S. Atty., New York City (Whitney North Seymour, Jr., U. S. Atty. for Southern District of New York, and Ross Sandler, Asst. U. S. Atty., New York City, on the brief), for appellee.

Before MOORE, FEINBERG and MANSFIELD, Circuit Judges.

MANSFIELD, Circuit Judge:

Appellant Juan Pedro Farinas was indicted by a grand jury in the Southern District of New York in a five-count indictment charging that in three related

aspects (Counts 1 through 3) he failed to obey the orders of Armed Forces representatives while at the military installation where he was inducted, 50 U.S.C. App. § 462(a), 32 C.F.R. § 1632.14(b)(4), that he failed to report for and submit to induction into the Armed Forces in violation of 50 U.S.C. App. § 462(a), 32 C.F.R. § 1632.14, and that he hindered and interfered with the administration of the Military Selective Service Act of 1967 by engaging in activity which disrupted the processing of other registrants, 50 U.S.C. App. § 462(a). The first three counts, detailing Farinas' failure to obey orders, were merged into one count at trial, and Farinas was convicted on all counts of the resulting three-count indictment on January 29, 1971, after a two-day trial before Judge Pollack and a jury. We affirm the conviction.

The evidence adduced at trial, which must upon appeal be viewed in the light most favorable to the Government, with all permissible inferences drawn in its favor, United States v. Dardi, 330 F.2d 316, 325 (2d Cir.), cert. denied, 379 U.S. 845, 85 S.Ct. 50, 13 L.Ed.2d 50 (1964), showed that Farinas had registered under Selective Service regulations at Local Board No. 7, Manhattan, on May 19, 1965. He received several student deferments before being classified I–A on January 23, 1968. On May 10, 1968, he complied with orders to report for a pre-induction physical examination and as a result of such examination was found qualified for military service. On July 26, 1968, he was mailed a notice ordering him to report for induction on August 13, 1968. On August 7, 1968, he voluntarily visited the office of the 108th United States Army Military Intelligence Group in the Federal Building in New York City and told the officer in charge, Louis J. Travaglino, that he would refuse to serve in the Armed Forces.

On the day appointed for his induction, Farinas participated in an early-morning anti-war demonstration on the part of about 50 persons in front of the Armed Forces Examining and Entrance Station at 39 Whitehall Street in New York City. At about 7:15 A.M. Farinas left the demonstrating group to enter the induction center, carrying a bag containing copies of a handbill expressing his opposition to American military involvement in Vietnam, and to the draft. He was met at the door of the induction center by Captain James Kenny, the chief processing officer at the center, who had observed the demonstration from his post inside the induction center and had concluded that Farinas was its focal point. Sergeant Elias Bereza, a non-commissioned processing officer, was with Captain Kenny at the door. At Captain Kenny's request, Farinas presented his induction order. Captain Kenny and Sergeant Bereza then escorted Farinas to Sergeant Bereza's office, Room 203. Captain Kenny departed, but Sergeant Bereza remained and advised Farinas that since Farinas' distribution of literature would disrupt processing and possibly lead to violence because of objections by some registrants to having literature forced on them, he would have to surrender his leaflets until he had completed his own processing. After some discussion of Farinas' constitutional rights, Sergeant Bereza yielded and permitted Farinas to retain possession of the literature, with the warning, however, that any abuse of this constitutional right would result in Farinas' being declared an uncooperative registrant, subject to criminal prosecution. The pertinent regulations were read to Farinas and he was asked if he had any questions.[1] He did not.

---

1. AR 601–270, ¶ 3–31(c) (2), as recodified on March 18, 1969, reads as follows:

    "(2) *Uncooperative.* A registrant who refuses to comply with instructions, rules or procedures prescribed for registrant processing, or who refuses to take part in some, or all, of the prescribed processing, testing, or examinations will be informed that his refusal constitutes a felony under the provisions of the Military Selective Service Act of 1967. He will be further informed that convictions of such offense in civil pro-

Farinas then was permitted to enter Room 204, a large room in which registrants were ordered to report initially, fill out forms, read, and pass time at various stages of the induction process. In Room 204, Farinas began distributing his literature and talking to the other registrants. Sergeant Bereza appeared and asked Farinas to refrain from such conduct on the ground that he was interrupting the induction process. He asked Farinas to come with him to his office, which adjoined Room 204. Sergeant Bereza stepped into his office, but Farinas did not follow him; he continued passing out literature and talking to the other registrants. A brief scuffle ensued. After returning to Room 204 and again unsuccessfully ordering Farinas to go to Room 203, Sergeant Bereza summoned Captain Kenny to Room 204.

Kenny, Bereza, and Farinas went into Room 203 and Captain Kenny counseled Farinas pursuant to Army Regulation 601–270, advising him that the distribution of literature and the making of speeches would not be permitted "to the extent that it would interfere with his induction processing and with the processing of the other individuals who were in the building at that time." Farinas was told that if he engaged in such disruptive speech-making and distribution of literature he would be declared an uncooperative registrant subject to criminal prosecution. Farinas replied, "I don't intend to cooperate with you or anybody else in this building." When

the counseling was completed, Captain Kenny left the scene to attend to other business.

Ten minutes later Captain Kenny was summoned to Room 206, a room in which Armed Forces personnel and registrants were engaged in filling out and checking various forms. Captain Kenny found Farinas standing in front of a group of registrants and addressing them "in a very loud, boisterous manner, telling them they did not have to cooperate with us, the war was an immoral war, et cetera." Captain Kenny approached Farinas and ordered him to stop, reminding Farinas of the counseling which he had provided only minutes before. Farinas did not stop. Kenny then cleared the room of other persons, whose activities had already been halted by Farinas' conduct, and declared Farinas an uncooperative registrant. Farinas was escorted down the stairs and departed from the building, still making antiwar speeches and distributing leaflets.

Farinas was initially indicted in a one-count indictment on November 15, 1968, for failure to obey certain unspecified orders of the representatives of the Armed Forces. This indictment was dismissed by Judge Tenney upon a motion by Farinas, United States v. Farinas, 299 F.Supp. 852 (S.D.N.Y.1969), on the ground that it was overly vague. Farinas was reindicted on May 29, 1969, in the indictment upon which he was tried. His attempts to secure dismissal of the May 29 indictment on some of the

ceedings will subject him to punishment by imprisonment for not more than 5 years, or a fine of not more than $10,000, or both. If he persists in his refusal, the following action will be taken:

(a) If his conduct permits (e. g., if he is not engaging in physical or vocal activity which he will not refrain from doing in order to be reasoned with), he will be requested, but not required, to make a signed statement, dated, in his own handwriting, as follows (insert the phrase or phrases which pertain to him) : 'I refuse to comply with instructions, rules or procedures prescribed for registrant processing.' 'I refuse to

take part, or all, of the prescribed processing.' 'I refuse· to take prescribed tests/examinations.' Such statement should be witnessed by at least two witnesses who will affix their signatures to the statement.

(b) His records will be returned to his local board. He will not be furnished any means of transportation.

(c) Letter of refusal to cooperate will be prepared in quadruplicate. Content and distribution of the letter will be as prescribed in (1) (b) above, except that in lieu of reference to refusal to be inducted, there will be included a description of the facts concerning his refusal to cooperate."

grounds now urged were unsuccessful, United States v. Farinas, 308 F.Supp. 459 (S.D.N.Y.1969).

We begin with the argument which counsel for Farinas emphasized during oral argument. It is contended that the regulation which forms the basis for conviction on Count One (the consolidated count) impinges on First Amendment rights and is unconstitutionally vague and overbroad, and that in addition it exceeds the intended and permissible scope of the rule-making authority which Congress delegated. The regulation in question reads as follows: "Upon reporting for induction, it shall be the duty of the registrant * * * (4) to obey the orders of the representatives of the Armed Forces at the place where his induction will be accomplished." 32 C. F.R. § 1632.14(b) (4). The regulation is given teeth by 50 U.S.C. App. § 462(a), which reads in part as follows:

> "Any member of the Selective Service System or any other person charged as herein provided with the duty of carrying out any of the provisions of this title * * * or the rules or regulations made or directions given thereunder * * * who in any manner shall knowingly fail or neglect to perform such duty * * * shall * * * be punished by imprisonment for not more than five years or a fine of not more than $10,000. * * *"

It is possible that this regulation, viewed wholly apart from the context in which it is applicable, might raise serious constitutional questions, cf. Shuttlesworth v. Birmingham, 394 U.S. 147, 89 S.Ct. 935, 22 L.Ed.2d 162 (1969). However, when viewed in context as applied it appears to be reasonably essential to the performance of a basic governmental function, and sufficiently narrow and limited in scope to constitute a permissible restriction upon the exercise of First Amendment rights, which are not absolute, Cox v. Louisiana, 379 U.S. 536, 559, 85 S.Ct. 453, 13 L.Ed.2d 471 (1965). A key to our interpretation is to be found in the opening proviso of the regulation

itself, "Upon reporting for induction. * * *" Thus the regulation by its terms applies only to registrants who have reported to the induction center, and it may not be employed to suppress speech beyond what is required by the exigencies of the induction process. Callison v. United States, 413 F.2d 133 (9th Cir. 1969). Any restriction on speech imposed to facilitate the induction process, to which the regulation is expressly confined, will be limited both in time (to the day of induction) and place (to the induction area itself). In this case the regulation had no effect— nor could it legitimately have had an effect—upon the anti-war demonstration which went on outside the induction center, and in which Farinas himself participated without restraint before entering the induction center.

The First Amendment is not a license to impede and disrupt the orderly performance of an essential function of government, United States v. O'Brien, 391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968). The public and private interests at stake must be weighed. For instance, the Government's use of a public building for a valid and specific governmental function entitles it to limit the exercise within that building of First Amendment rights to the extent that such exercise will interfere with the performance of that function. Adderley v. Florida, 385 U.S. 39, 87 S.Ct. 242, 17 L.Ed.2d 149 (1966). Here the Government was entitled to an orderly induction process, free from disruption; and other registrants who were there pursuant to orders, being a captive audience without right to leave, were entitled to be free from harassment unconnected with the induction process, Callison v. United States, supra. In view of the countless types of specific conduct that could be engaged in to impede the processing of inductees, to require that the regulation be more specific, or that it spell out each such species of conduct, would be unreasonable and would serve no useful purpose. The objective of the regulation is clear: to authorize the is-

suance of orders that would facilitate the uninterrupted processing of inductees. By its own terms and by reason of its place in a specific regulatory scheme, the regulation must be construed narrowly and constricted in its applicability by limitations as to person, time, and place that will avoid unconstitutionality. Scales v. United States, 367 U.S. 203, 81 S.Ct. 1469, 6 L.Ed.2d 782 (1961); United States v. Spock, 416 F.2d 165, 173 n. 20 (1st Cir. 1969). We therefore find no constitutional infirmity. Eisner v. Stamford Board of Education, 440 F.2d 803 (1971).

A jury question was thus presented at trial as to whether the orders which Farinas disobeyed (to cease his disruptive distribution of literature, speechmaking, and other boisterous conduct) were related to the orderly conduct of the induction process. There was more than ample evidence from which the jury could infer that the orders were so related.

■ As for the delegation argument, we think it clear that Congress could constitutionally grant to military personnel at the induction center the power to give necessary orders carrying penalties for disobedience. Registrants are not subject to military jurisdiction and punishment for their refusal to obey lawful orders until they take the oath of induction, Billings v. Truesdell, 321 U.S. 542, 64 S.Ct. 737, 88 L.Ed. 917 (1944). Nothing in the statute, 50 U.S.C. App. § 462(a), suggests that Congress did not intend to authorize the adoption of regulations such as the one here in question which insures orderliness and freedom from disruption that are essential to the speedy, efficient processing of inductees. We find such delegation constitutional in light of the limited scope of the regulation, considered above.

A second contention on appeal relates to the admission into evidence of testimony concerning Farinas' conduct in Room 206, where he was finally declared an uncooperative registrant. Two arguments are offered in support of this claim—first, that the evidence was inad-

missible unless qualified by a proper limiting instruction because the Government did not, in its bill of particulars, specify Farinas' conduct in Room 206, and second, that since Farinas' conduct in Room 206 was not considered by the grand jury, it should not be considered by the petit jury.

■ °Farinas' reliance on the notice argument is foreclosed by the requirement that "the deviation between the Government's bill and its proof at trial" be "of substantial prejudice to the defendant," United States v. Glaze, 313 F. 2d 757, 759 (2d Cir. 1963). Here no such prejudice has been shown. This is not a case in which the Government has held back the name of a victim or key witness, United States v. Glaze, supra; cf. United States v. Tomasetta, 429 F.2d 978 (1st Cir. 1970); United States v. Agone, 302 F.Supp. 1258 (S.D.N.Y. 1969). The difference between the bill and the proof here stemmed from a failure by the Government to designate one room in a building otherwise designated in which an ongoing course of conduct was pursued. Appellant has not claimed that admission of this evidence would in all events have been error, or even that he was surprised by the Room 206 testimony and should have been granted a continuance to prepare a rebuttal to it. Farinas instead contends that a limiting instruction should have been given, explaining to the jury that the Room 206 testimony bore only on Farinas' intent. However, no such instruction was requested, and in view of the fact that the evidence related to a single continuous course of conduct occurring within a period of an hour, the trial court's failure to give one *sua sponte* was not plain error, Rule 52(a), F.R.Cr.P.

■ For similar reasons, we reject the assertion that the Room 206 evidence was improperly admitted because Captain Kenny did not mention it in his testimony before the grand jury. Since it was admissible to show intent, the fact that it may not have been presented to the grand jury is immaterial. This case is not one in which the defendant

could have been convicted for an offense completely separate from that for which he was indicted, cf. United States v. Agone, *supra*. To hold that the Room 206 evidence was inadmissible because not presented to the grand jury would be tantamount to requiring that the Government submit its entire case to that body. We decline to establish such a rule.

■ A third contention is that Farinas' conviction on Count Four—failure to report for and submit to induction—is invalid because officials at the induction center failed to follow the procedure outlined in AR 601–270 ¶¶ 37, 40.[2] The argument is unpersuasive on the facts of this case. Farinas was amply warned pursuant to Army Regulation 601–270 that he would be subject to criminal sanctions if he were declared an uncooperative registrant. Moreover, his own conduct, including his statement on August 7, 1968, to Travaglino that he would refuse to serve in the Armed Forces and his statement on August 13, 1968, to Kenny that he would not cooperate with him or anyone else in the induction center, provided a sufficient basis for the inference that he did not intend to take part in the prescribed processing or to submit to induction, and that it would have been a futile gesture to read to him the prescribed governmental form. United States v. Trimm, 416 F.2d 1145 (2d Cir. 1969); United States v. Meyers, 410 F.2d 693 (2d Cir.), cert. denied, 396 U.S. 835, 90 S.Ct. 93, 24 L.Ed.2d 86 (1969).

■ Farinas' allegation that Count Four of the indictment is duplicitous must also be rejected. Although that count alleges conjunctively a refusal to report for and submit to induction, it apprised Farinas with reasonable certainty of the charge against him. Moreover, the procedure of reporting is a continuous one, involving a series of steps from the time of a registrant's arrival at the center until he is asked to step forward, whereupon reporting merges into induction. A registrant cannot satisfy the obligation to report merely by showing up at the center and

2. AR 601–270, ¶¶ 37, 40:

"37. *Induction.* a. the following procedure will be followed in the induction of all registrants into the Armed Forces:

(1) Registrants who have been determined to be fully qualified for induction in all respects will be assembled. The induction officer will inform them of the imminence of induction, quoting the following:

'You are about to be inducted into the Armed Forces of the United States, in the Army, the Navy, the Air Force, or the Marine Corps, as indicated by the service announced following your name when called. You will take one step forward as your name and service are called and such step will constitute your induction into the Armed Forces indicated.'

(2) Any registrant who fails or refuses to step forward when his name is called will be removed quietly and courteously from the presence of the group about to be inducted and processed as prescribed in paragraph 40c."

"40. Processing steps for registrants in special categories. * * *

* * * * *

c. Registrants who refuse to submit to induction. Any registrant who has been removed from the group as prescribed in paragraph 37a(2) and who persists in his refusal to submit to induction will be informed that such refusal constitutes a felony under the provisions of the Universal Military Training and Service Act, as amended. He will be informed further that conviction of such an offense under civil proceedings will subject him to be punished by imprisonment for not more than 5 years, or a fine of not more than $10,000, or both. He will then be informed again of the imminence of induction using the language specified in paragraph 37a(1)., and his name and service number again will be called. If he steps forward at this time, he will be informed that he is a member of the Armed Forces concerned, using the language specified in paragraph 37a(3). If, however, he persists in refusing to be inducted, the following action will be taken: [the following material sets forth procedures for taking a signed statement, preparing letters to various authorities, and notifying the United States Attorney.]."

then departing before he is processed or taking some other action which prevents his being processed. Here the evidence was sufficient to support a finding that the defendant was guilty as charged, since his statements and conduct justified the inference that he would neither report for nor submit to induction. See United States v. Gutknecht, 406 F.2d 494, 496 (8th Cir. 1969), rev'd on other grounds, 396 U.S. 295, 90 S.Ct. 506, 24 L.Ed.2d 532 (1970); Billings v. Truesdell, 321 U.S. 542, 557, 64 S.Ct. 737, 88 L.Ed. 917 (1944).

We have reviewed the other contentions raised by Farinas, including his assertions of error in the court's charge to the jury, and his claim that the evidence was insufficient to sustain a conviction on Counts One and Five, and find them to be without merit.

The conviction is affirmed.