UNITED STATES of America,
Plaintiff-Appellee,

v.

Jeffrey Davis BLAKELY, Defendant-Appellant.

No. 73-2975.

Summary Calendar.*

United States Court of Appeals,
Fifth Circuit.

March 15, 1974.
Rehearing Denied April 16, 1974.

* Rule 18, 5th Cir.; see Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al., 5th Cir. 1970, 431 F.2d 409, Part I.

Hal H. McCaghren, West Palm Beach, Fla., for defendant-appellant.

Robert W. Rust, U. S. Atty., David F. McIntosh, Asst. U. S. Atty., Miami, Fla., for plaintiff-appellee.

Before THORNBERRY, GOLDBERG and RONEY, Circuit Judges.

PER CURIAM:

Jeffrey Davis Blakely was convicted of failing to report for induction into the Army and for failing to keep his lo-

cal draft board apprised of his address. 50 U.S.C.A. App. § 462. This Court had previously affirmed Blakely's I–A classification based on his ineligibility for a discretionary III–A classification. The factual background is set forth in that

opinion. Blakely v. S.S.S. Local Board #143, 455 F.2d 795 (5th Cir. 1972).[1]

Although Blakely alleges fourteen points of error on this appeal, summary treatment is sufficient for most.[2] Only his sufficiency of the evidence con-

1. (1) Beginning in January 1965, Blakely was classified II–S while attending a junior college. He was reclassified I–A on certain occasions, but continued to be placed back in a II–S category during his studies. In December 1967, Blakely executed a request for a II–S undergraduate deferment under § 6 (h)(1) of the Military Selective Service Act of 1967, which included the following waiver:

No person who has received a student deferment under the provisions of this paragraph shall thereafter be granted a deferment under this subsection, . . . except for extreme hardship to dependents (under regulations governing hardship deferments), or for graduate study, occupation, or employment necessary to the maintenance of the national health, safety, or interest.

Blakely received this II–S undergraduate deferment while a student at Florida Atlantic University.

(2) Appellant married in July of 1968, and after receipt of his baccalaureate degree, he was classified I–A on January 28, 1969.

(3) On January 30, 1969, Blakely received his notice to report for induction on February 13, 1969. He submitted a dependency questionnaire to the local board showing that he was married and that his wife was pregnant and requested a reopening and reclassification. The local board denied his request and an appeal board affirmed and continued the registrant's I–A classification.

(4) On April 28, 1969, Blakely was again ordered to report for induction, but the board postponed this action until July to allow him to complete a teaching contract.

(5) On June 4, 1969, Blakely's son was born and the board was notified. However, his July induction date was again postponed to October because of this grandmother's illness.

(6) Beginning in September 1969, there was another flood of letters and appeals. In October, the board reviewed Blakely's file and obtained information from the local welfare department relating to the dependency of his wife and child. The board advised Blakely that he had not presented facts warranting a reopening of his classification. He was ordered to report for induction on December 2, 1969.

(7) On November 28, 1969, this suit was filed in the District Court and Blakely did not report for induction.

The District Court held that appellant Blakely was not entitled to the III–A fatherhood or dependency classification and ordered that his complaint be dismissed. 455 F.2d 795, 796–797 (5th Cir. 1972).

2. (1) Blakely's motion to dismiss the indictment because it charged in a single count the conjunctive failure to report for and submit to induction was denied by the United States Magistrate. After this denial, Blakely did not request a hearing before the District Court judge nor did he request a bill of particulars to clarify the indictment. Since the indictment apprised Blakely with reasonable certainty of the charge against him, we find no error. United States v. Farinas, 448 F.2d 1334. 1340, (2d Cir. 1971), cert. denied, 405 U.S. 934, 92 S.Ct. 946, 30 L.Ed.2d 810 (1972).

(2) Adequate discovery was afforded the defendant through either the criminal action or his previous civil litigation, Blakely v. S.S.S. Local Board No. 143, 455 F.2d 795 (5th Cir. 1972).

(3) Blakely's motion for a continuance was made in relation to the discovery request. Denial of the motion was not an abuse of discretion in light of the court's disposition of the discovery motion.

(4) The denial of defendant's motion for oral voir dire examination was within the discretion of the trial judge. Stone v. United States, 324 F.2d 804 (5th Cir. 1963), cert. denied, 376 U.S. 938, 84 S.Ct. 793, 11 L.Ed. 2d 659 (1964).

(5) The trial judge did not err in denying Blakely's motion for aquittal.

(6) The request by the Court to admit defendant's entire Selective Service file into evidence was not prejudicial error. The defendant had previously requested that most of the file be admitted and did not object to the time saving device of admitting the remainder in its entirety.

(7) Blakely objected to a portion of the prosecutor's summation argument. The objection was sustained. Now he contends another portion was highly prejudicial. His failure to object, request curative instruction, or move for a mistrial precludes reversal in the absence of clear error.

(8) The District Court's refusal to admit Blakely's proffered evidence concerning alleged preferential treatment afforded other Selective Service registrants was not error. The evidence was received in the civil case which decided as a matter of law that there was no prejudicial preferential treatment to Blakely's detriment. 455 F.2d at 797–798.

tentions and the due process argument concerning proper classification merit discussion. Finding no error, however, we affirm.

(1) It is undisputed that Blakely failed to report for induction. His defense is that the Government produced no evidence establishing that he received the induction notice. Blakely argues that he was traveling during the period in May 1972 when the notices were mailed and when he was ordered to report. He also claims that his mail service was sporadic, especially concerning forwarded mail, due to his not infrequent changes of address.

■ The record reflects, however, that induction notices were sent to all of Blakely's known addresses and to his attorney. None were returned. The factual determination whether Blakely received the induction order is a jury question. It was answered adversely to defendant.

■ Fisher v. United States, 413 F. 2d 1034 (9th Cir. 1969), relied on by Blakely, is factually distinguishable from this case. In *Fisher*, the registrant had failed to report for induction on the specified date due to temporary absence from his home address which precluded notification of the order to report. Upon his return, however, Fisher requested a new induction date. The Government prosecuted instead. Blakely, conversely, never fulfilled his continuing obligation to report as prescribed by 32 C.F.R. § 1641.5. This neglect, coupled with the proliferation of notices and their subsequent nonreturn, is a sufficient basis upon which the jury could find "knowing and willful failure"

to report. *See* United States v. Lee, 458 F.2d 32 (9th Cir. 1972).

■ (2) Count II of the indictment alleged that as of May 21, 1972, Blakely had not advised his local board of an "address where mail would reach him." A registrant is required to keep his local board "currently informed in writing of (1) the address where mail will reach him. . . ." 32 C.F.R. § 1641.1(a). This duty is satisfied "when the registrant, in good faith, provides a chain of forwarding addresses by which mail, sent to the address which is furnished the board, may be by the registrant reasonably expected to come into his hands in time for compliance." Bartchy v. United States, 319 U.S. 484, 489, 63 S.Ct. 1206, 1208, 87 L.Ed. 1534 (1943). To be in violation of this duty, there must be evidence of a "deliberate purpose on the part of the petitioner not to comply with the Selective Service Act or the regulation issued thereunder." Ward v. United States, 344 U.S. 924, 73 S.Ct. 494, 97 L.Ed. 711 (1953).

■ Blakely informed the local board of his Palm Beach and Tallahassee, Florida, addresses. By his own admission, he did not, however, personally inform the board in writing of his Texas address to which he moved in August 1971 and remained until July 1972.[3] He contends that the board should have known of this address since he requested an unknown, unnamed employee of the Arlington Clinic to mail his medical records containing the address to the local board after his examination at the clinic. The credibility of this testimony was a question for the jury. A letter from his attorney to the local board, dat-

---

(9) The charge given by the trial judge correctly reflects the law.

(10) Since there is a continuing duty on the inductee's part to report for induction after notification, the trial judge did not err in reading that requirement from 32 C.F.R.

(11) The District Court charged the jury that the correctness of Blakely's classification, previously determined in a civil suit, was not within the parameters of their deliberations. The validity of a registrant's classification is a question of law. Cox v. United States, 332

U.S. 442, 68 S.Ct. 115, 92 L.Ed. 59 (1947) ; United States v. Ponto, 454 F.2d 657 (7th Cir. 1971).

3. McIntosh: Well, my question is: When is the last time that you personally told the Selective Service Board where you [lived], over your own signature or through your own phone call or in person or by telegram? Blakely: Probably, I would say when it was 690 North County Road, North Palm Beach.

ed January 30, 1973, enclosed the 1971 clinical report because "a check of the record of your office does not indicate that you received it." Blakely's neglect to inform the board himself is framed in a fact pattern of prior induction notices and litigation which substantiates that he knew the local board was interested in him and had been for sometime. There was sufficient evidence to support a finding by the jury that Blakely had deliberately not informed the board of an address at which mail could reach him.

A "home address" or address of someone who knows of the registrant's whereabouts is also maintained in the registrant's Selective Service file. *See* United States v. Chudy, 474 F.2d 1069 (9th Cir. 1973); United States v. Burton, 472 F.2d 757 (8th Cir. 1973). Blakely listed his parents as the "person who will always know" his whereabouts. In sending induction notices to Blakely, the local board attempted to contact his parents but were unsuccessful because Blakely did not inform the local board of his parents' change of address. Thus, his "home address" was incorrectly listed.[4] The mail was evidently not forwarded to the parents' new address. The evidence is sufficient to support a finding that Blakely did not "provide a valid chain of forwarding addresses to his local board." United States v. Read, 443 F.2d 842, 844 (5th Cir. 1971), cert. denied, 404 U.S. 943, 92 S.Ct. 294, 30 L. Ed.2d 258 (1972). *See* United States v. Secoy, 481 F.2d 225 (6th Cir. 1973).

(3) Blakely's due process arguments were answered in his civil suit against the local board. Blakely v. S.S. S. Local Board #143, 455 F.2d 795 (5th Cir. 1972). He asserted that he was entitled to a discretionary III–A deferment on the basis of paternity. Prior to the 1967 statutory change in the Draft Act, Blakely was mandatorily classified II–S as an undergraduate student. After the effective date of the statutory changes, he was again classified II–S for undergraduate work.[5] His subsequent request for a discretionary III–A deferment was denied because

> a registrant who is classified in Class II–S after the date of enactment of the Military Selective Service Act of 1967 shall not be eligible for reclassification in Class III–A . . . .

32 C.F.R. § 1622.30(a) (1970).

Plotner v. Resor, 446 F.2d 1066 (5th Cir. 1971), is distinguishable from the case at bar. Although Plotner had received a II–S deferment after the enactment of the 1967 Act, it was a discretionary graduate school deferment, as opposed to a mandatory undergraduate deferment. This Court found no statutory authority upon which to automatically deny a III–A classification to any registrant who had held the discretionary II–S graduate classification. Blakely received the mandatory II–S undergraduate deferment and falls squarely within the provisions of the Act.

The remaining opportunity for Blakely to receive a III–A classification is predicated upon 32 C.F.R. § 1622.-30(b) (1970) and its requirement of extreme hardship. He now claims that notifying the local board of his second child's birth in June 1971 was sufficient to establish a prima facie case of extreme hardship for the III–A dependency classification and necessitated the reopening of his classification. The birth occurred, however, while Blakely's original induction order of May 23, 1969, was still pending. To establish a prima facie case under that fact situation, he must show a change in status due to circumstances beyond his control. 32 C.F.R. §

---

4. Q. Mr. Blakely, is your testimony that you first became aware of your parents' new address sometime in April of 1972?
   A. That's correct, Mr. McIntosh.
   Q. Have you ever given that new address to your Local Board?
   A. No, Sir, I have not.

5. Blakely's second II–S undergraduate classification spanned the period from March 26, 1968, to January 28, 1969.

1625.2. *See* Ehlert v. United States, 402 U.S. 99, 91 S.Ct. 1319, 28 L.Ed.2d 625 (1971). The conception of his child is not a circumstance over which Blakely had no control. Blakely v. S.S.S. Local Board #143, 455 F.2d 795 (5th Cir. 1972); United States v. Dell'Anno, 436 F.2d 1198 (9th Cir. 1971).

Affirmed.