George M. **LOFTON**

v.

John L. **McLUCAS, Secretary of the Air Force, and his Successors, et al.**

No. CIV 74–5053.

United States District Court, D. South Dakota.

Oct. 18, 1974.

---

Rona W. Goodman, Ellsworth A. F. B., S. D., for plaintiff.

Larry Von Wald, Asst. U. S. Atty., Rapid City, S. D., for defendants.

## MEMORANDUM OPINION

BOGUE, District Judge.

The above matter came before this Court upon plaintiff's application for a temporary restraining order, affidavits of plaintiff and Mr. Lamar Crosby in support of such application, and plaintiff's verified complaint.

The following facts set forth in the above documents are pertinent to plaintiff's application for a temporary restraining order. The plaintiff enlisted in the United States Air Force on November 23, 1973. In June, 1974, plaintiff was assigned to the 44th Fuel Supply Squadron at Ellsworth Air Force Base. On September 9, 1974, plaintiff and Jerry R. Goss, an enlisted serviceman also stationed at Ellsworth Air

Force Base, co-authored a letter wherein they stated their dissatisfaction with President Gerald L. Ford's pardon of former President Richard M. Nixon, and wherein they further stated their desire and intent to resign from the United States Air Force. Since October 1, 1974, the plaintiff has refused to report to his assigned duties at Ellsworth Air Force Base because he believes that his self-proclaimed resignation of September 9, 1974, was an effective resignation from the United States Air Force. Because of plaintiff's refusal to report to his assigned duty he has been restricted to Ellsworth Air Force Base by his commander. A Special Courts Martial proceeding to determine the issues of plaintiff's resignation and refusal to report to duty is scheduled for October 21, 1974. On October 4, 1974, Lamar Crosby, a television news reporter employed by television station K.O.T.A., arranged to interview the plaintiff on October 8, 1974, at 11:30 a. m., at Ellsworth Air Force Base. Mr. Crosby planned to televise the interview. The plaintiff's commander consented to Mr. Crosby's plan to a televised interview at Ellsworth Air Force Base upon the condition that the plaintiff appear before the press properly dressed in military uniform. The televised interview was not conducted on October 8th and has not since been conducted because the plaintiff refuses to wear his military uniform.

■■ The grant or denial of a preliminary injunction rests in the discretion of the trial court. Deckert v. Independence Shares Corp., 311 U.S. 282, 61 S.Ct. 229, 85 L.Ed. 189 (1940). Generally the four most important factors to be considered in determining whether a temporary injunction should be granted are: (1) immediate and irreparable injury; (2) substantial likelihood of prevailing on the merits; (3) public interest to be served by granting an injunction; and (4) any harm possibly resulting to other parties in the proceeding. Allison v. Froehlke, 470 F.2d 1123, 1126 (5th Cir. 1972), Fed.R.Civ.P. 65.

After giving serious consideration to the specific facts contained in the affidavits and in plaintiff's verified complaint in light of the above four factors, this Court finds that justification does not exist for granting a temporary restraining order.

■ It does not clearly appear that plaintiff will suffer immediate and irreparable injury, loss, or damage if the injunction is not granted. The plaintiff states in his Application for Temporary Restraining Order:

> Defendants have already agreed that plaintiff may speak to the press in person and be photographed by the press. The only question is what plaintiff will wear. (Plaintiff's Application p. 2.)

Even if the injunction is not granted the plaintiff can still hold a televised interview and meet the press. The gist of his claimed irreparable injury and hardship is that he appear before the press in uniform. In his application the plaintiff urges that:

> The requirement that plaintiff wear a uniform may, however, force him to concede a defense in a Special Courts Martial proceeding, namely that he is no longer a member of the Air Force. The loss of such defense will be a hardship upon the plaintiff. (Plaintiff's Application p. 2.)

The plaintiff's voluntary enlistment in the United States Air Force entailed the obligation to wear a uniform. The plaintiff's conduct in refusing to report to his assigned duty caused him to be confined to base. His refusal to wear his uniform prevents his televised interview. The requirement that a serviceman wear his military uniform on a military base during duty hours either to appear before the press or to perform his assigned duties does not rise to the level of "immediate and irreparable injury,

loss, or damage," within the meaning of Rule 65 of the Federal Rules of Civil Procedure.

■ This Court further finds that there is not a substantial likelihood that the plaintiff will prevail on the merits. The plaintiff claims that his not wearing the uniform is a form of symbolic speech. The plaintiff relies on Tinker v. Des Moines Independent Community School District, 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969), wherein the Supreme Court held that in a school situation symbolic speech is permissible where such conduct does not interfere with the requirements of appropriate discipline. In *Tinker*, however, the Court was careful to point out that "the record does not demonstrate any facts which might reasonably have led school authorities to forecast substantial disruption of or material interference with school activities," as a result of permitting the plaintiff to wear an armband during school hours indicating his opposition to the war in Vietnam. 393 U.S. at 514, 89 S.Ct. at 740. In fact, the plaintiff claimed First Amendment rights limited to acts "not disruptive of school discipline or decorum." 393 U.S. at 515, 89 S.Ct. at 741. The demands of the plaintiff in the instant case could reasonably be anticipated to be disruptive of discipline and interfere with the military functions, morale, and mission of Ellsworth Air Force Base. There is a fundamental difference between the role and the operations of a military base and a school. At the military base, the serviceman's training is in discipline and obedience. The school, on the other hand, is a learning ground for all new and conflicting ideas and a place for searching inquiry and open debate. The rule in *Tinker* which applies to a civilian school situation, clearly does not apply to a military base. Dash v. Commanding General, Fort Jackson, South Carolina, 307 F.Supp. 849, 857 (D.S.C.1969).

In *Dash* the plaintiffs claimed deprivation of their protected First Amendment rights to two matters: (1) Order of the Post Commander restricting their distribution of published materials on post; and (2) the refusal of the Post Commander to grant plaintiff's request to conduct a public, open meeting on base to discuss complaints of the Vietnam war. ·

The Court in *Dash, supra*, set forth many principles and authorities applicable to the present case. Citing Callison v. United States, 413 F.2d 133, 135–136 (9th Cir. 1969), the *Dash* Court pointed out that a serviceman's right of free speech is not absolute. With his induction into military service he "necessarily accepts some abridgement of his right of free speech." 307 F.Supp. 849, 852. In *Callison, supra*, a draftee, in process of induction, sought to induce other draftees at the induction center to sign a petition opposing the draft and the war in Vietnam. Ordered to desist, he disobeyed, claiming the right to distribute his petition under the First Amendment. The Court held that "the order to refrain from soliciting signatures was not an impermissible intrusion upon appellant's First Amendment rights and was entitled to respect and obedience." 413 F.2d at 135.

Courts must be "scrupulous not to interfere with legitimate army matters," Orloff v. Willoughby, 345 U.S. 83, 93, 73 S.Ct. 534, 540, 97 L.Ed. 842, 847 (1953), because "the military constitutes a specialized community governed by a separate discipline from that of the civilian." 345 U.S. at 94, 73 S.Ct. 540. The *Dash* Court quoted former Chief Justice Earl Warren in The Bill of Rights and the Military, 37 N.Y.Univ.L.Rev. 181, 186–7 (1962) as stating the proper judicial role in a military situation:

> So far as the relationship of the military to its own personnel is concerned, the basic attitude of the Court has been that the latter's jurisdiction is most limited. . . . This 'hands off' attitude has strong historical support, of course. While I cannot here explore the matter completely, there is also no necessity to do so, since it is indisputable that the tradition of our

country, from the time of the Revolution until now, has supported the military establishment's broad power to deal with its own personnel. The most obvious reason is that courts are ill equipped to determine the impact upon discipline that any particular intrusion upon military authority might have. 307 F.Supp. at 853.

We agree with the Court in Dash v. Commanding General, Fort Jackson, South Carolina, 307 F.Supp. 849 (1969) that:

> The right [of the military] to restrict [a serviceman's First Amendment rights], however, must no doubt be kept within reasonable bounds; it is not, and cannot be, a completely limitless power. And, however hesitant they may be to 'intrude'; Courts will be available to determine whether there is a reasonable basis for such restrictions as may be placed on the serviceman's right of free speech by the military establishment. *Id.* at 854. [Clarification added.]

This Court does not in any way pass on the merits of the plaintiff's case. The foregoing authorities are set out simply to substantiate the finding that there does not exist in this case a substantial likelihood that the plaintiff will prevail on the merits.

■ In considering the third factor to be considered in granting or denying an injunction, it is difficult to imagine how the public interest would be served in permitting the plaintiff to appear before the press without his military uniform. This Court finds that there would be no benefit to the public interest.

As to the fourth factor, the possibility of harm to other parties to the proceeding that would result from granting the injunction, we paraphrase Chief Justice Warren and hold that on the present record, this Court is ill equipped to determine the impact upon discipline that this intrusion upon military authority might have.

For the above reasons, the plaintiff's application for a preliminary injunction is hereby denied.