**Linda K. HESS et al., Appellants,**

v.

**James R. SCHLESINGER, Secretary of Defense, et al.**

**No. 72-1806.**

United States Court of Appeals, District of Columbia Circuit.

Argued Sept. 10, 1973.

Decided Oct. 30, 1973.

Janice A. Goodman, New York City, of the bar of the Supreme Court of New York, pro hac vice, by special leave of court, with whom Alan Dranitzke, Washington, D. C., was on the brief, for appellants.

Garey G. Stark, Asst. U. S. Atty., with whom Harold H. Titus, Jr., U. S. Atty., John A. Terry, James F. Rutherford, and Leonard W. Belter, Asst. U. S. Attys., and Kevin W. Carmody, Asst. U. S. Atty., at the time the brief was filed, were on the brief, for appellees.

Before BAZELON, Chief Judge, and LEVENTHAL and ROBINSON, Circuit Judges.

BAZELON, Chief Judge:

Marine regulations limit the freedom of personnel assigned to units in the Western Pacific to have their dependents visit them. The District Court rejected appellants' constitutional challenges and upheld these restrictions by granting the government's motion for summary judgment. The question before us is whether the record permits summary judgment.

I

Marine Corps Orders provide that personnel assigned to Fleet Units in Japan, Okinawa, the Philippines, and Hawaii are not authorized to have dependents live with them.[1] Dependents may visit at their own expense, but not for more than sixty days during each tour of duty.[2]

---

1. Marine Corps Order 1300.81; Wing Order 1715.1B.

2. *Id.* The Orders in effect when this case was brought limited dependents to one visit of no more than sixty days during each tour of duty. In its brief on appeal, the government stated that the Orders had been changed to allow for an indeterminate number of visits, but the

On July 18, 1971, appellant Patrick Hess was assigned to a one year tour with the Marine Fleet Unit at Iwakuni, Japan. His wife, appellant Linda Hess, joined him on October 26, 1971. She had a valid United States passport and a six month travel visa issued by the government of Japan. Linda Hess did not leave after sixty days and, on January 17, 1972, Patrick was transferred to the Marine base in Okinawa. Appellants allege that this was a punitive transfer imposed because the sixty day limitation had been exceeded.

In the proceedings below appellants sought to enjoin the enforcement of the sixty day rule and to have it declared violative of their constitutional rights. They served interrogatories on the government seeking to discover the rationale behind the rule. The government moved for a protective order so that it would not have to answer the interrogatories while its motion for summary judgment was pending. Although the Court never ruled on the government's protective order and the interrogatories were never answered, the Court nonetheless granted the government's motion for summary judgment.[3]

## II

Appellants allege, *inter alia*, that the Marine Corps Orders violate their right to marital privacy by keeping them apart.[4] The government replies that a compelling state interest—keeping Marine Fleet Units "combat ready"—out-weighs the rights asserted. Fleet Units are highly mobile and are expected to respond immediately when the national interest requires it. The Marines, it is said, will be less efficient in combat if they are concerned about the uncertain status of dependents suddenly left behind in a foreign land. Thus the regulation does not apply to dependents who are nationals of the country where the Marine is stationed or who were employed in that country when they became dependents.[5] It would appear that a Marine is regarded as less anxious about the ability of such dependents to care for themselves since they are in familiar surroundings.

The resolution of this case would require a careful weighing of military needs and constitutional rights. There is a strong national interest in having Marine units capable of quick and efficient action. Moreover the judiciary is "scrupulous not to interfere" with legitimate military matters.[6] On the other hand, the right of marital privacy is a "fundamental" one.[7] Regulations limiting it must be narrowly drawn to express only the vital interests at stake.[8] And privacy is but one of the constitutional rights at issue here.[9]

The present record is inadequate for purposes of summary judgment. The District Court granted summary judgment because it found that "the prolonged presence of any Fleet Marine Force dependent . . . impair[s] the

total days on all visits cannot exceed sixty. Appellee's brief at 3, note 5. This change does not affect the disposition of this case.

3. Memorandum Order, Civil Action No. 2559–71, June 16, 1972.

4. Linda Hess also alleges that the Orders violate her right to travel and represent an unconstitutional extension of military jurisdiction to civilians. Patrick Hess alleges that the Orders subject him to cruel and unusual punishment, violate his right to free association, and represent an unlawful exercise of military jurisdiction over conduct which is not service connected.

Both appellants maintain that the Orders establish a sex-based classification in violation of the Equal Protection clause because all wives of servicemen are classified as "dependents", while only some husbands of servicewomen are so classified. Appellants further allege that the limitation of the Orders to dependents who are not nationals of or employees in the country where the Marine is stationed is a violation of equal protection.

5. Marine Corps Order 1300.81; Wing Order 1715.1B.

6. Orloff v. Willoughby, 345 U.S. 83, 94, 73 S.Ct. 534, 97 L.Ed. 842 (1953).

7. Roe v. Wade, 410 U.S. 113, 155, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973).

8. *Id.*

9. *See* note 4, *supra.*

functioning of the Marines involved."[10] This finding, however, was based solely on the statements of Lieutenant Colonel Murray, a Marine Corps lawyer.[11] Appellants introduced an affidavit from another Marine Corps lawyer asserting that the sixty day limitation hampered military efficiency.[12] In addition, appellants' unanswered interrogatories raised pertinent questions about the government's position. They asked, for example, whether other services have combat ready troops in the Western Pacific; whether those troops have the sixty day rule; and, if not, why the Marines are treated differently.[13]

Summary judgment may be granted only if there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law.[14] Appellants have raised a genuine issue of fact as to whether the sixty day rule

furthers combat readiness. This issue is material to their constitutional claims, since if the rule is unrelated to preparedness it may not serve any vital state interest. Thus summary judgment was inappropriate. Here, as in A Quaker Action Group v. Morton, the issues are "too difficult, too delicate, too dependent on careful assessment and weighing of constitutional rights, to rest conclusively on the untested declaration of an executive official."[15]

Neither the Government's claim of military necessity nor appellant's claim of constitutional rights may lightly be outweighed. As we have already indicated, the record does not permit a resolution of these conflicting claims by summary judgment. We therefore reverse and remand for trial.

So ordered.

---

10. Memorandum Order at 3.

11. Lieutenant Colonel Murray's affidavit is in Appendix to Appellants' brief at 30–36. The District Court may also have relied on Lieutenant Colonel Murray's statements on December 27, 1971, at the hearing on appellants' motion for a temporary restraining order. *See* Appendix to Appellee's brief at 15–21.

12. He argued that prolonged separation from wives led Marines to drug abuse, alcoholism, and other problems. *See* Appendix to Appellants' brief at 27–29.

13. Appellants' interrogatories at 3, 4.
There are other unsettled matters concerning the government's position. It is not clear,

for example, why, if the regulation is to prevent leaving dependents behind in "a foreign land," it applies to Hawaii. Nor is it clear why Marines will not worry about leaving dependents behind who are visiting pursuant to the sixty day rule when a mobilization takes place.

14. Fed.R.Civ.P. 56.

15. A Quaker Action Group v. Morton, 148 U.S.App.D.C. 346, 352, 460 F.2d 854, 860 (1971). In *Quaker Action* the state interest of Presidential safety had to be balanced against First Amendment freedoms.