Albert Edward GLINES, Captain USAF Reserves, Plaintiff,

v.

James L. WADE, Commander 349th Material Airlift Wing, et al., Defendants.

No. C–74–1264 WHO.

United States District Court, N. D. California.

May 30, 1975.

David M. Cobin, Breecker, Cobin & Dayley, Oakland, Cal., for plaintiff.

James L. Browning, Jr., U. S. Atty., Stephen A. Schefler, Asst. U. S. Atty., San Francisco, Cal., for defendants.

## MEMORANDUM OPINION AND ORDER

ORRICK, District Judge.

This case concerns the constitutionality of certain Air Force regulations which limit the right of Air Force members to circulate petitions. The cause came on for hearing on cross-motions for summary judgment on May 13, 1975. Having considered the pleadings, the affidavits, the memoranda of points and authorities, and oral argument, for the reasons hereinafter stated, plaintiff's motion for summary judgment is granted, and defendants' motion for summary judgment is denied.

### I.

The material facts are undisputed. Stated briefly, plaintiff, a captain in the Air Force Reserves, was on active duty

at Travis Air Force Base in April, 1974. He prepared a petition addressed to certain members of Congress requesting assistance in obtaining a relaxation of Air Force rules on hair length and, while on a routine training flight to Anderson Air Force Base in Guam, he allowed a blank copy of the petition to fall into the hands of another serviceman. This was in violation of Air Force Regulations AFR 30-1(9) and AFR 35-15, which state as follows:

AFR 30-1(9):

*"Right of Petition.* Members of the Air Force, their dependents and civilian employees have the right, in common with all other citizens, to petition the President, the Congress or other public officials. However, the public solicitation or collection of signatures on a petition by any person within an Air Force facility or by a member when in uniform or when in a foreign country is prohibited unless first authorized by the commander.

Reference: AFR 35-15"

AFR 35-15:

" \* \* \*

3.a. *Possession and Distribution of Written or Printed Materials:*

\*    \*    \*    \*    \*    \*

(2) When prior approval for distribution or posting is required, the commander will determine if a clear danger to the loyalty, discipline, or morale of members of the Armed Forces, or material interference with the accomplishment of a military mission, would result. If such a determination is made, distribution or posting will be prohibited and HQ USAF (SAFOI) will be notified of the circumstances.

\*    \*    \*    \*    \*    \*

(4) Distribution or posting may not be prohibited solely on the ground that the material is critical of Government policies or officials."

Defendants, plaintiff's superiors, determined that for violating such regulations by failing to ask permission of the commander before circulating his petition, plaintiff was to be removed from active duty and reassigned to Standby Reserve. Plaintiff was so transferred effective July 10, 1974; in consequence, he lost and continues to lose salary, retirement benefits, and flight experience.

## II.

The sole question of law presented on these facts is whether the Air Force Regulations thus restricting the right of petition on Air Force bases violate the First Amendment to the Constitution of the United States. If so, it was unlawful to discipline plaintiff for the above-described violation of said Regulations (*Shuttlesworth v. Birmingham,* 394 U.S. 147, 151, 89 S.Ct. 935, 22 L.Ed.2d 162 (1969)), and he is, therefore, entitled to reinstatement and compensation for the losses suffered by virtue of such discipline.

■ ■ Military regulations have traditionally been subject to a somewhat different constitutional standard than that applying to laws regulating civilians. The applicable standard involves a balancing of individual liberties against the public interest in accommodating legitimate military needs. *Carlson v. Schlesinger,* 511 F.2d 1327, 1332 (D.C. Cir. 1975); *Callison v. United States,* 413 F.2d 133, 136 (9th Cir. 1969). Civilian standards as to First Amendment freedoms are to apply unless it appears that "conditions peculiar to military life require a different rule". *Kauffman v. Secretary of the Air Force,* 135 U.S. App.D.C. 1, 415 F.2d 991, 997 (1969), *cert. den.* 396 U.S. 1013, 90 S.Ct. 572, 24 L.Ed.2d 505 (1970). However, with respect to petitions to Congress, any restrictive regulation must actually be necessary to the security of the United States.[1]

1. 10 U.S.C. § 1034 provides:
"No person may restrict any member of an armed force in communicating with a member of Congress, unless the communication is unlawful or violates a regulation

necessary to the security of the United States."
It appears clear that under this statute, as well as under the First Amendment itself, the right to petition Congress encompasses

■ There is, moreover, a general recognition by the judiciary that the military system of command requires that considerable latitude be given the Armed Forces in regulating and disciplining military personnel. *Parker v. Levy,* 417 U.S. 733, 758–759, 94 S.Ct. 2547, 41 L.Ed.2d 439 (1974). This is based in part on the view that military officials are better qualified than judges to assess military needs and weigh the negative impacts on military effectiveness of certain types of speech or conduct.[2] While this concept necessarily limits the scope of review by the Court, it does not destroy jurisdiction altogether. In a case involving the very same regulations which are at issue here, the Court of Appeals for the District of Columbia recently stated that the latitude to be permitted in prescribing regulations varies with the magnitude of the governmental or military interest involved. *Carlson v. Schlesinger, supra,* at 1332. That being so, the Court must make a threshold determination as to the military interest at stake before proceeding to apply the balancing test articulated above.

In the *Carlson* case, it was held that in a combat zone setting (Vietnam), the military interest was manifest; therefore, a prior approval requirement for petitioning activities was reasonable, and the latitude to be afforded a commanding officer in applying the regulation was substantial. Under such circumstances, the *Carlson* court concluded it should not upset the military ruling "unless the military's infringement upon first amendment rights [was] manifestly unrelated to legitimate military interests". *Id.* at 1333. The court, there-

fore, did not reach the question of the facial constitutionality of the regulations. *Id.* at 1334.

In the case at bench, the proscribed activity did not take place in a combat zone or during a time of war. It occurred at Guam in 1974. The military need to restrict peaceful petitioning activities appears, therefore, relatively insubstantial, and the Court may weigh the reasonability of the regulations with impunity.

AFR 30–1(9) requires prior approval by the commanding officer of *any* on-base solicitation of petition signatures at any time, as well as any off-base solicitation while in uniform or when in a foreign country. No distinction is made between combat and non-combat circumstances. No distinction is made between potentially inflammatory subjects and non-controversial material. No distinction is made between solicitation tending to interrupt or interfere with on-going military duties and solicitation at other times. The requirement applies to a broad range of petitioning activities which would unquestionably be protected in all but the most extreme military emergencies.

AFR 35–15 purports to provide guiding standards for commanders enforcing AFR 30–1(9). Consequently, it must be scrutinized together with AFR 30–1(9) in order to determine the constitutionality of both, because:

" * * * a law subjecting the exercise of First Amendment freedoms to the prior restraint of a license, without narrow, objective and definite standards to guide the licensing authority, is unconstitutional." *Shut-*

---

the right to solicit the signatures of others on petitions. Plaintiff has cited numerous cases to that effect, and this Court is not aware of any to the contrary. In *Carlson v. Schlesinger, supra,* at 1341 n. 21 (dissenting opinion), Chief Judge Bazelon advances the same view, and the majority opinion in that case does not seriously dispute it (*Id.* at 1333).

2. *Orloff v. Willoughby,* 345 U.S. 83, 93–94, 73 S.Ct. 534, 97 L.Ed. 842 (1953) ; *Carlson v. Schlesinger, supra,* at 1333; *Dash v. Commanding General,* 307 F.Supp. 849, 853 (D.S.C.1969), aff'd 429 F.2d 427 (4th Cir. 1970), cert. den. 401 U.S. 981, 91 S.Ct. 1192, 28 L.Ed.2d 333 (1971). See also, Chief Justice Earl Warren, The Bill of Rights and the Military, 37 N.Y.U.L.Rev. 181, 187 (1962).

*tlesworth v. Birmingham, supra,* at 150.

AFR 35–15 creates no categories of petitions or circumstances to be exempted from the prior authorization requirement. The commander is clearly to pass upon *all* petitions to be circulated. The guidelines permit the commander to prohibit petition circulation upon a determination that it presents a "clear danger "to loyalty, discipline or morale" or that it materially interferes with "accomplishment of a military mission".[3] These guidelines are, therefore, substantially broader than those prescribed by Congress in 10 U.S.C. § 1034, which permits only such regulation as is "necessary to the security of the United States". Arguably, under *Parker v. Levy, supra,* the limiting construction given the terms "loyalty, discipline and morale" by long military usage and interpretation might narrow the scope of AFR 35–15. But, as pointed out in the dissenting opinion in *Carlson v. Schlesinger, supra,* at 1342–1343, guidelines regulating *conduct* which are narrow enough to pass constitutional muster may not be sufficiently narrow when they regulate protected *speech* instead.[4] Furthermore, even narrowly construed, the terms are far broader than the outer limits on restriction set by Congress.

■ On their face, therefore, the regulations suffer from considerable overbreadth.[5] A law is overbroad "if in its reach it prohibits constitutionally protected conduct". *Grayned v. City of Rockford,* 408 U.S. 104, 114, 92 S.Ct. 2294, 2302, 33 L.Ed.2d 222 (1972). Even without actual prohibition, the chilling effect which inheres in overly broad restrictions in general [6] is particularly apparent in a military setting, where petitions addressed to members of Congress are very likely to involve complaints about military policies or about the administration of military affairs by superior officers.[7] To require that all petitions to be circulated be passed upon first by the base commander imposes a considerable burden upon the free exercise of the First Amendment right of petition for redress of grievances.

Balanced against that burden is the legitimate need of the military to restrict the circulation of certain petitions under certain circumstances. Those circumstances are spelled out by Congress in 10 U.S.C. § 1034,[8] and it would be improper for this Court to imply the existence of any others.[9] It is not seriously disputed that a petition like plaintiff's, involving a subject as innocuous as Air Force grooming standards and circulated without fanfare, falls far outside those legitimate areas of military concern. It must, of course, be recognized that the Supreme Court has indicated First Amendment restrictions should not be

---

3. Moreover, the *caveat* in AFR 35–15 that signature gathering "may not be prohibited *solely* on the ground that the material is critical of government policies or officials" (emphasis added) implies that the critical nature of the material may properly be at least a secondary ground for denying permission.

4. The Supreme Court in *Parker v. Levy, supra,* at 756, 94 S.Ct. 2547, also notes this rule, citing *Smith v. Goguen,* 415 U.S. 566, 573, 94 S.Ct. 1242, 39 L.Ed.2d 605 (1974).

5. They may also suffer from vagueness, but vagueness is not an issue here since plaintiff has no standing to raise it. Since AFR 30–1(9) requires prior permission for circulating *any* petition, plaintiff could have had no doubt of its applicability to him. See *Parker v. Levy, supra,* at 756, 94 S.Ct. 2547.

6. *Steffel v. Thompson,* 415 U.S. 452, 462, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974) ; *Grayned v. City of Rockford, supra,* at 114, 94 S.Ct. 2294; *Dombrowski v. Pfister,* 380 U.S. 479, 486–487, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965) ; *NAACP v. Button,* 371 U.S. 415, 433, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963).

7. Such was the case here, as well as in *Carlson v. Schlesinger, supra, Callison v. United States, supra,* and *Allen v. Monger,* C–73–745RFP and *Moses v. Foley,* C–73–1012RFP (N.D.Cal. Aug. 23, 1974) decided by Judge Peckham of this Court.

8. See, *supra,* Note 1.

9. As the Court of Military Appeals stated in *United States v. Schmidt,* 16 USCMA 57, 59 (1966) :

    "[T]he purpose behind this legislation is obvious and the right absolute within the strictures specifically delineated therein."

declared unconstitutional for overbreadth where they could validly be applied to numerous situations and invalidly to only "marginal" situations. *Parker v. Levy, supra*, at 760. But that is not the case here. On the contrary, the military need to control petitioning arises only in extraordinary circumstances (such as in a combat zone as in *Carlson v. Schlesinger, supra*, or in an induction center where disruption is threatened as in *Callison v. United States, supra*), and thus it is the exception rather than the rule. Clearly such governmental interests are inadequate to outweigh the burden on personal liberty imposed by the regulations, especially where the regulations could be rewritten so as to apply only in those situations where they might be reasonably necessary.[10]

■ Consequently, I must conclude that the regulations, AFR 30–1(9) and the pertinent parts of AFR 35–15, taken together, failed to meet the test of constitutionality under the First Amendment and the applicable case law. They are, therefore, invalid, and plaintiff was improperly disciplined for having breached them. Plaintiff is entitled to restoration of all benefits and privileges to which he was entitled prior to his removal from active duty status on April 17, 1974, including future active duty, compensation for wages lost as a result of said removal, and injunctive relief against all punitive actions taken or threatened by defendants by reason of the petitioning activities which are the subject of this lawsuit. Accordingly,

It is hereby ordered that plaintiff's motion for summary judgment is granted.

It is further ordered that defendants' motion for summary judgment is denied.

Counsel for plaintiff shall prepare and file a judgment in accordance with this memorandum opinion and order in form approved by defendants on or before June 13, 1975.

---

10. Chief Judge Bazelon suggests a format for alternative regulations in *Carlson v. Schlesinger, supra*, at 1344–1345 (dissenting opinion). This Court notes also that it is a much simpler matter for an administrative office to redraft its own regulations than for a legislature to revise its statutes.