SECRETARY OF THE NAVY ET AL. *v.* HUFF ET AL.

No. 78–599.  Argued November 6, 1979—Decided January 21, 1980

*Kent L. Jones* argued the cause *pro hac vice* for petitioners. On the briefs was *Solicitor General McCree.*

*Alan Dranitzke* argued the cause for respondents.  With him on the brief was *David Addlestone.*

PER CURIAM.

The question in this case is whether Navy and Marine Corps regulations violate 10 U. S. C. § 1034 by requiring military personnel on an overseas base to obtain command approval before circulating petitions addressed to Members of Congress.  Section 1034 provides that "[n]o person may restrict any member of an armed force in communicating with a member of Congress, unless the communication is unlawful

or violates a regulation necessary to the security of the United States."

## I

In 1974, Frank L. Huff, Robert A. Falatine, and Robert E. Gabrielson were serving in the Marine Corps at the United States Marine Corps Air Station in Iwakuni, Japan. On separate occasions, each of them sought the base commander's permission to circulate a petition addressed to a Member of Congress. The petitions dealt with the use of military forces in labor disputes within the United States, amnesty for men who resisted the draft or deserted the Armed Forces during the Vietnam war, and United States support for the Government of South Korea. The first two requests proposed circulation within the base; the last proposed circulation both within and without the base. The commander denied the first two requests, but he allowed the petition about South Korea to circulate within the base.

On another occasion, Huff and Falatine each asked to distribute a leaflet annotating the Declaration of Independence and the First Amendment with commentary critical of military commanders who restrict petitioning. The base commander denied Falatine's request on the ground that the commentary was disrespectful and contemptuous, but on the same day and without explanation, he granted Huff leave to distribute the same material. Finally, respondents Huff and Falatine were arrested for circulating outside the base a petition to a Member of Congress that objected to American support for the Government of South Korea. They were charged with violating regulations because they had circulated the petition without requesting command approval. Huff was convicted and sentenced to confinement, forfeiture of half-pay, and reduction in grade. The charges against Falatine were dismissed for lack of evidence.

The respondents then brought a class action in the United States District Court for the District of Columbia, seeking

declaratory and injunctive relief against future enforcement of four Navy and Marine Corps regulations.[1] Each regulation provides, in relevant part, that members of the Marine Corps shall not "originate, sign, distribute, or promulgate petitions, publications, . . . or other . . . written material . . . on any military installation on duty or in uniform, or anywhere within a foreign country irrespective of uniform or duty status, unless prior command approval is obtained."[2] The

---

[1] The class consists of "all members of the Marine Corps stationed at, assigned to, or on duty at the Marine Corps Air Station at Iwakuni, Japan." 413 F. Supp. 863, 864–865 (1976).

The respondents also sought a judgment expunging Falatine's arrest record, invalidating Huff's conviction, and restoring to Huff all benefits denied as the result of his conviction. *Id.*, at 865. Those claims, however, are no longer part of the case. See *infra*, at 456, and n. 4.

[2] Fleet Marine Force Pacific Order 5370.3, ¶ 3 (b) (1974). The full subparagraph reads:

"No Fleet Marine Force, Pacific or Marine Corps Bases, Pacific, personnel will originate, sign, distribute, or promulgate petitions, publications, including pamphlets, newspapers, magazines, handbills, flyers, or other printed or written material, on board any ship, craft, aircraft, or in any vehicle of the Department of the Navy, on any military installation on duty or in uniform, or anywhere within a foreign country irrespective of uniform or duty status, unless prior command approval is obtained."

The other three regulations, although different in geographic scope, use substantially identical language. See Pacific Fleet Instruction 5440.3C, § 2604.2 (2) (1974); First Marine Aircraft Wing Order 5370.1B, ¶ 5 (a) (2) (1974); Iwakuni Marine Corps Air Station Order 5370.3A, ¶ 5 (a) (2) (1973).

Each regulation directs a commander to "control or prohibit" the circulation of written materials that, in his judgment, would:

"(1) Materially interfere with the safety, operation, command, or control of his unit or the assigned duties of particular members of the command; or,

"(2) Present a clear danger to the loyalty, discipline, morale, or safety to [*sic*] personnel of his command; or,

"(3) Involve distribution of material or the rendering of advice or counsel that causes, attempts to cause, or advocates, insubordination, disloyalty,

respondents contended that this requirement violated 10 U. S. C. § 1034 and the First Amendment. The petitioners conceded that the base commander had misapplied the regulations when he denied respondents permission to circulate their petitions within the base, and the respondents sought no relief for these past wrongs. Thus, the issue presented was the facial validity of the regulations that require prior command approval for petitioning inside and outside the Iwakuni air station.

On cross-motions for summary judgment, the court declared the regulations invalid with respect to materials distributed within the base during off-duty hours and away from restricted or work areas. The court upheld the regulations with respect to distributions outside the base. In that situation, the court concluded, command approval was necessary to prevent political activity in violation of the Status of Forces Agreement between the United States and Japan.[3] 413 F. Supp. 863 (1976). The petitioners appealed, but the respondents did not cross appeal.[4]

---

mutiny, refusal of duty, solicits desertion, discloses classified information, or contains obscene or pornographic matter; or,

"(4) Involve the planning or perpetration of an unlawful act or acts." Fleet Marine Force Pacific Order 5370.3, ¶ 4 (a) (1974).

See Pacific Fleet Instruction 5440.3C, § 2604.2 (4) (1974); First Marine Aircraft Wing Order 5370.1B, ¶ 6 (c) (1974); Iwakuni Marine Corps Air Station Order 5370.3A, ¶ 5 (c) (1973). The respondents' complaint did not challenge these standards, App. 5–7, and the Court of Appeals did not review them, 188 U. S. App. D. C. 26, 32–33, 575 F. 2d 907, 913–914 (1978). Thus, the only issue before us is the validity of the prior approval requirement.

[3] Article XVI of the Status of Forces Agreement between the United States and Japan specifically proscribes political activity by American servicemen within the host country. [1960] 11 U. S. T. 1664, T. I. A. S. No. 4510.

[4] The respondents had sought expungement of Falatine's arrest record, invalidation of Huff's conviction for petitioning outside the base without permission, and restoration of all benefits denied to Huff as the result of his conviction. Since the District Court found the regulations valid as

The Court of Appeals for the District of Columbia Circuit affirmed in part and vacated in part. 188 U. S. App. D. C. 26, 575 F. 2d 907 (1978). It concluded that the only real controversy between the parties concerned the application of the challenged regulations to petitions addressing Members of Congress. The court therefore considered only the validity of the regulations as they affect circulation within the base of petitions to Congress. It held that requiring prior command approval for the circulation of such petitions violated 10 U. S. C. § 1034. That statute, the court concluded, gives both individuals and groups the right to petition Members of Congress. It allows only such restrictions on that right as are "necessary to the security of the United States." Since the record in this case showed that the Iwakuni base was not within "an actual and current combat zone," the court concluded that petitioners had not shown that a prior restraint on petitioning within the base was necessary to the national security. The court therefore did not reach the question whether the command approval requirement also violated the First Amendment.

We granted certiorari to consider whether the challenged regulations, as they affect the circulation of petitions within a military base, violate 10 U. S. C. § 1034. 440 U. S. 957 (1979).[5]

---

applied to petitioning outside the base, the court denied these claims for relief. 413 F. Supp., at 870.

[5] At oral argument, the respondents also contended that regulations requiring members of the Armed Forces to secure command approval before circulating petitions within a military base violate the First Amendment. Tr. of Oral Arg. 30. Our decision today in *Brown* v. *Glines, ante*, p. 348, sustains the facial validity of this type of regulation and, therefore, disposes of respondents' First Amendment contention.

We have had no occasion, either in *Glines* or in this case, to consider a claim that regulations were misapplied in a particular instance. See *ante*, at 357, n. 15; *supra*, at 456. We have noted, however, that regulations in each Armed Service were promulgated under a Department of Defense directive that "advises commanders to preserve servicemen's 'right of

458

## II

In *Brown* v. *Glines, ante,* p. 348, decided today, we concluded that "Congress enacted § 1034 to ensure that an individual member of the Armed Services could write to his elected representatives without sending his communication through official channels." *Ante,* at 359. Nothing in the legislative history suggests that Congress intended to authorize the unrestricted circulation of petitions within a military base. Indeed, both Congress and this Court have determined that "the special character of the military requires civilian authorities to accord military commanders some flexibility in dealing with matters that affect internal discipline and morale." *Ante,* at 360. Thus, in construing statutes that affect such matters, we must not limit a commander's authority more than the legislative purpose requires. Permitting an individual member of the Armed Services to submit a petition directly to any Member of Congress serves the purpose of § 1034 without unnecessarily endangering a commander's ability to preserve morale and good order among his troops. In *Glines,* therefore, we held that § 1034 does not invalidate regulations requiring members of the Armed Forces to secure command approval before circulating petitions within a military base.

Since the Court of Appeals reached a contrary conclusion in this case, its judgment is

*Reversed.*

MR. JUSTICE MARSHALL took no part in the consideration or decision of this case.

---

expression . . . to the maximum extent possible, consistent with good order and discipline and the national security.'" *Brown* v. *Glines, ante,* at 355. A member of the service who thinks that his commander has misapplied the regulations can seek remedies within the service. See, *e. g.,* Uniform Code of Military Justice, Art. 138, 10 U. S. C. § 938. Furthermore, the federal courts are open to assure that, in applying the regulations, commanders do not abuse the discretion necessarily vested in them.

[For dissenting opinion of Mr. Justice Brennan, see *ante,* p. 361.]

Mr. Justice Stewart and Mr. Justice Stevens dissent. For the reasons stated in their dissenting opinions in *Brown* v. *Glines, ante,* pp. 374 and 378, they would affirm the judgment of the Court of Appeals in this case.